# COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Ortiz and Causey
Argued at Lexington, Virginia

LISA MICHELE PARKER, A/K/A
 LISA M. PARKER

v.      Record No. 0377-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE DANIEL E. ORTIZ
DECEMBER 13, 2022

FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Paul A. Dryer, Judge

H. Eugene Oliver, III (Evans Oliver, PLC, on brief), for appellant.

John Beamer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

A jury convicted Lisa M. Parker of assault and battery of a law enforcement officer. By

final order entered December 9, 2021, the Circuit Court of Augusta County sentenced her to seven

months of incarceration. Parker contends that the evidence at trial was insufficient to support her

conviction because the Commonwealth failed to prove that she intended to cause bodily harm. She

also asserts that the trial court abused its discretion when it denied her motion for a continuance

after granting the Commonwealth's motion to amend the indictment. Finally, she argues that the

trial court erred by refusing to give several of her proffered jury instructions, pertaining to probable

cause and the right to use reasonable force to resist an illegal arrest. Because the evidence is

sufficient to support the conviction, and the trial court did not abuse its discretion, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On November 25, 2019, a grand jury indicted Parker for "unlawfully and feloniously assault[ing]" Augusta County Sheriff's Deputy N.A. Roe, knowing that he was a law enforcement officer engaged in public duties. Augusta County Sheriff's Deputy Stroop testified that on July 28, 2019, he and Deputy Roe responded to a domestic violence call at the residence Parker shared with her boyfriend Jonathan Pecor.[1] When the deputies arrived, they went to the side door of the residence, where Pecor and Parker "were kind of bickering back and forth and talking over each other."

After separating Parker and Pecor, Deputy Stroop spoke with Pecor for approximately fifteen minutes. Pecor stated that he "never hit" Parker but had been "trying to deflect punches that [Parker] was throwing at him." Pecor further explained that he was "the man so [he was] supposed to take the blame for everything"; thus, he "admitted" that he hit Parker so that he "would go to jail" and she would not. Based on those statements, Deputy Stroop arrested Pecor. Deputy Stroop observed that Pecor had suffered several injuries, including a cut on the left side of his nose, a scrape on his forehead, and a cut by his hairline.

When Deputy Stroop spoke with Parker, she stated that Pecor "threw her on the ground," "kicked her," and "smashed her head into a wall." She acknowledged that both she and Pecor were "intoxicated" and admitted "throwing things into [a] TV." Deputy Stroop did not observe any damage to the walls of the residence. He also did not observe any injuries on Parker's body; Parker stated that she "doesn't bruise easy." Deputy Stroop later photographed Parker's face and hands at her request.

---

[1] Deputy McManaway and Trooper Cappo also responded to the call but left the scene before the events at issue in this appeal.

Deputy Stroop ultimately decided to arrest both Pecor and Parker for assault and battery of a family or household member. Deputy Stroop testified that Code § 19.2-81.3 required the deputies to "arrest the primary aggressor if" they were "able to determine one." Deputy Stroop determined that Parker was the primary aggressor but also arrested Pecor due to his statements.

When Deputy Stroop informed Parker that she was under arrest, she became "extremely angry" and began screaming and cursing at the deputies. The deputies handcuffed Parker—which she resisted—and escorted her to Deputy Roe's cruiser. Against Parker's continued resistance, the deputies sat her in the cruiser's backseat. After Parker stated that the handcuffs, which were behind her back, were too tight, Deputy Roe removed one handcuff so that the deputies could move her hands to the front. Parker then "became aggressive again" and "flail[ed] around." The deputies removed her from the vehicle and re-handcuffed her. When Parker "refused to get back in the car," the deputies "assist[ed]" her into a position where she sat on the vehicle's rear seat "facing out the door." Parker then "raised her leg up" and "kicked Deputy Roe" in "the stomach area," near the bottom of his vest. The kick "knock[ed]" Deputy Roe "back a step" before the deputies got Parker's feet back inside the vehicle.

After Deputy Stroop's testimony, the Commonwealth moved to amend the indictment to allege that Parker "did feloniously assault *and batter*" Deputy Roe. (Emphasis added). The trial court granted the motion over Parker's objection, noting that Code § 19.2-231 authorizes a trial court to permit amendment of an indictment at any time before the jury returns a verdict. Parker then moved for a continuance; the trial court denied the motion, concluding that the amendment did not constitute a surprise within the meaning of Code § 19.2-231. The trial court noted that defense counsel "very capably and ably cross-examined Deputy Stroop with the terms of a police report that clearly indicated the events that transpired."

Deputy Roe testified that Parker kicked him "between [his] vest and [his] belt" with the sole of her foot while he was standing by the right rear passenger door of his cruiser. He described the kick as a "donkey kick," and asserted that immediately before the kick, he saw Parker "with her foot back." Deputy Roe stated that Parker was "very irate" and angry and that she showed "no remorse" for the kick.

After the Commonwealth rested, the trial court denied Parker's motion to strike the evidence. Parker testified in her own defense. She stated that she had called 911 during an altercation with Pecor. The altercation began when Parker reached across Pecor to grab the TV remote. Pecor "attack[ed]" her and after she fought him off, she threw the remote and a speaker at the TV because Pecor "had just bought the TV" and "the remote, in [her] mind, got her attacked." Before the deputies separated Pecor and Parker, Parker told Deputy Stroop that she "was attacked and dragged to the floor," that she could not "move [her] jaw all the way," and that her neck hurt. Parker admitted at trial that she had been drinking that night but denied that she was drunk.

Parker was "very shocked" when Deputy Stroop told her that she was under arrest because she was the one who had been assaulted and called the police. She repeatedly begged them not to arrest her and began cursing. Parker admitted that she "struggled" as the deputies placed her in custody but stated that she did not twist, turn, or flail. According to Parker, when "some of [her] spittle got on" the cheek of one of the deputies, he told her that she could be charged with assaulting an officer. She averred that she did not intend to strike Deputy Roe with her foot and stated that she "was unaware that [her feet] touched anybody." She confirmed on cross-examination that she did not "feel the need" to apologize to Deputy Roe because she "did not attempt to kick the officer."

After the defense rested, the trial court denied Parker's renewed motion to strike. The trial court then reviewed the parties' proposed jury instructions. The court refused to give four of Parker's proposed instructions, labeled Instructions H, I, J, and K. Instruction H recited a portion of

Code § 19.2-81.3, relating to a law enforcement officer's authority and obligation to arrest without a warrant upon having probable cause to believe that a person committed an assault and battery against a family or household member. The trial court noted that Instruction H merely recited statutory language and did "not add any valuable statement of the law to the jury."

Instruction I stated, in part, that "[t]he lawful discharge of duty in making an arrest requires (1) that the officer making the arrest has the authority to do so and (2) that the conduct of the officer in making the arrest is lawful." Instruction J, citing to *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979), stated the constitutional standard for probable cause to arrest, and Instruction K, citing to *Commonwealth v. Hill*, 264 Va. 541, 546 (2002), stated that "[u]nder the common law, a citizen generally is permitted to use reasonable force to resist an illegal arrest." The trial court found that, considering Pecor's statements and Stroop's observation of Pecor's injuries, "a reasonably prudent officer" applying a standard of objective reasonableness "could find probable cause to arrest both" Pecor and Parker. Accordingly, the trial court refused to give Instructions H, I, J, and K. The jury convicted Parker of assault and battery of a law enforcement officer.

## ANALYSIS

Parker makes three assignments of error. First, she challenges the sufficiency of the evidence regarding intent. Second, she asserts that the trial court abused its discretion by denying her motion for a continuance after the Commonwealth amended the indictment. Third, she argues that the trial court abused its discretion by refusing to give her proffered jury instructions. We disagree with all three arguments.

### I. Sufficiency of the Evidence

Parker argues that the evidence at trial was insufficient to prove that she intended to harm Deputy Roe. We disagree.

- 5 -

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

"Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." *Vay v. Commonwealth*, 67 Va. App. 236, 242 (2017) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 629 (2009)). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

"To sustain a conviction for battery, the Commonwealth must prove a wil[l]ful or unlawful touching of another." *Kelley v. Commonwealth*, 69 Va. App. 617, 625 (2019) (alteration in original) (quoting *Parish v. Commonwealth*, 56 Va. App. 324, 330 (2010)). "One cannot be convicted of assault and battery without an intention to do bodily harm—either an

actual intention or an intention imputed by law." *Parish*, 56 Va. App. at 330 (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000)). "[T]he slightest touching of another . . . if done in a rude, insolent, or angry manner, constitutes a battery for which the law affords redress." *Kelley*, 69 Va. App. at 628 (quoting *Adams*, 33 Va. App. at 469). "In such circumstances, '[t]he unlawful intent may be imputed,'" *id.* (alteration in original) (quoting *Parish*, 56 Va. App. at 331), and "may often be gathered from the conduct of the aggressor, viewed in the light of the attending circumstances," *Parish*, 56 Va. App. at 331 (quoting *Wood v. Commonwealth*, 149 Va. 401, 405 (1927)). "Whether an act is done in a 'rude, insolent, or angry manner' is a finding of fact that this Court will not disturb on appeal unless the finding is plainly wrong or no evidence supports it." *Kelley*, 69 Va. App. at 628-69 (citing *Parish*, 56 Va. App. at 331).

Deputy Stroop and Deputy Roe testified that Parker was angry and cursing throughout the encounter. Parker resisted the deputies' initial attempt to handcuff her and place her in the police cruiser. After Deputy Roe removed one of the handcuffs from her, she renewed her aggression and "flail[ed] around," so the deputies had to remove her from the police cruiser to replace the handcuff. She then refused to return to the police cruiser, and the deputies had to physically place her back inside. Parker then pulled her leg and kicked Deputy Roe, knocking him a step back. Deputy Roe testified that Parker was "irate" and showed no remorse for the kick.

Viewing the deputies' testimony in the light most favorable to the Commonwealth and disregarding all conflicting testimony by Parker, a rational trier of fact could find that Parker willfully kicked Roe in a rude, insolent, or angry manner. *See Kelley*, 69 Va. App. at 628. Accordingly, a rational factfinder could also impute the requisite unlawful intent to Parker's actions. *Id.* The intent may also be inferred from the totality of her conduct and the attending

circumstances. *Parish*, 58 Va. App. at 331. Thus, the trial evidence was sufficient to support the guilty verdict.

## II. Continuance

Parker next asserts that the trial court should have granted her motion for a continuance because the Commonwealth's amendment to the indictment constituted a surprise. We again disagree.

When an amendment to the indictment "operates as a surprise to the accused, [she] shall be entitled, upon request, to a continuance of the case for a reasonable time." *Ortiz v. Commonwealth*, 276 Va. 705, 722 (2008) (quoting Code § 19.2-231)). "The circuit court's ruling on a motion for a continuance will be rejected on appeal only upon a showing of abuse of discretion *and* resulting prejudice to the defendant." *Id.* (quoting *Haugen v. Shenandoah Valley Dep't. of Soc. Servs.*, 274 Va. 27, 34 (2007)).

Parker has not shown that the amendment operated as a surprise or that she was prejudiced by the denial of a continuance. After the trial court overruled Parker's objection to the Commonwealth's motion to amend, Parker's trial counsel stated, "I suppose that in order to properly preserve my objection to the amendment, I'd like to also, nevertheless, ask for the continuance, even though—regardless of the practical considerations." Parker did not argue to the trial court that the amendment was a surprise. Furthermore, as the Commonwealth noted at trial, the arrest warrant directed that Parker be arrested on the charge that she did "unlawfully and feloniously . . . assault and batter" Deputy Roe. Thus, Parker was on notice well before the amendment that the Commonwealth could present evidence that she kicked Deputy Roe. In addition, the trial court found that Parker's trial counsel "very capably and ably cross-examined Deputy Stroop with the terms of a police report that clearly indicated the events that transpired."

Accordingly, the trial court did not abuse its discretion in concluding that the amendment did not constitute a surprise.

Parker also has failed to show any prejudice from the trial court's denial of a continuance. In addressing the prejudice prong in *Ortiz*, the Supreme Court held that the defendant failed to show either "a specific need for additional investigation to prepare . . . a defense" or that "there was testimony of witnesses, or evidence in any other form, which he could secure if a continuance was granted."  276 Va. at 723.  Here, Parker argues that assault and battery have distinct elements and contends that trial counsel "had prepared to defend against charges of assault and not assault and battery, including the scope of cross-examination and preparation of jury instructions."  But Parker does not specify on appeal, and did not explain to the trial court, what additional areas of cross-examination she would have pursued had the trial court continued the trial.  Further, Parker did not seek to recall Stroop to the stand after the amendment.  Finally, Parker does not allege that the denial of a continuance prevented her from adducing any evidence in her case-in-chief.

Accordingly, Parker has not established that the amendment to the indictment was a surprise under Code § 19.2-231, or that the trial court's denial of a continuance prejudiced her.

### III.  Jury Instructions

Parker's final argument is that the trial court erred in refusing her proposed jury instructions H, I, J, and K.  We again disagree.

This Court reviews a trial court's decisions in giving and denying requested jury instructions for abuse of discretion.  *Barney v. Commonwealth*, 69 Va. App. 604, 609 (2019). Our "responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'"  *Conley v.*

- 9 -

*Commonwealth*, 74 Va. App. 658, 674-75 (2022) (quoting *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019)).

The four instructions pertain to whether the deputies had probable cause to arrest Parker for committing assault and battery against Pecor and whether Parker was permitted to use reasonable force to resist the arrest. The parties and the trial court agreed that the instructions accurately state the law. Further, neither the trial court nor the Commonwealth challenged Parker's premise that a citizen has the right to use reasonable force to resist an unlawful arrest. *See Hill*, 264 Va. at 546; *cf. Brown v. Commonwealth*, 27 Va. App. 111, 116-17 (1998) ("It has long been held in Virginia that where an officer attempts an unlawful arrest, the officer is an aggressor[,] which gives the arrestee the right to use self-defense to resist so long as the force used is reasonable.").[2] The trial court decided not to give the proffered instructions because it determined as a matter of law that the deputies had probable cause to arrest Parker, rendering the instructions irrelevant.

Parker contends on appeal that her theory that the arrest was unlawful was supported by more than a scintilla of evidence and that the trial court "unfairly established facts in controversy contrary to [her] theory of the case." "[W]hen reviewing a trial court's refusal to give a proffered jury instruction, we review the evidence in the light most favorable to the proponent of the instruction." *Dandridge v. Commonwealth*, 72 Va. App. 669, 676 (2021) (quoting *Lienau v. Commonwealth*, 69 Va. App. 254, 260 (2018)). A trial court "may not refuse to grant a proper, proffered instruction" if there is more than "a scintilla" of evidence supporting the instruction. *Id.* at 680 (quoting *Lienau*, 69 Va. App. at 264). "Whether there is more than a mere scintilla of

---

[2] In *Hill*, the Supreme Court of Virginia held that a defendant may not defend against a charge of assault and battery of a police officer on the grounds that he used reasonable force to resist an unlawful detention, as opposed to an unlawful arrest. 264 Va. at 548. In *Brown*, we reversed the defendant's conviction for obstructing justice by resisting arrest after finding that her arrest was unlawful. 27 Va. App. at 116-18.

evidence is determined on a case-by-case basis." *Jones v. Commonwealth*, 71 Va. App. 70, 94 (2019).

"The lawfulness of an arrest . . . present[s] [a] mixed question[] of law and fact." *Smith v. Commonwealth*, 30 Va. App. 737, 740 (1999). Where the facts are undisputed, however, only a question of law remains. *See Bristol v. Commonwealth*, 272 Va. 568, 573 (2006) (reviewing "*de novo* the issue of law whether the undisputed facts . . . establish[ed] that the officers effectuated an arrest"). It is "fundamental" that questions of law should be decided by the court rather than submitted to the jury. *Amonett v. Commonwealth*, 70 Va. App. 1, 8 (2019); *see Wiggins v. Commonwealth*, 47 Va. App. 173, 193 n.6 (2005) ("Jury instructions are not invitations by the court to the jury to decide questions of law.").

In her testimony, Parker disputed certain portions of Deputy Stroop's and Deputy Roe's testimony. Even viewing the evidence in the light most favorable to Parker, however, the trial court correctly found as a matter of law that Deputy Stroop had probable cause and statutory authorization to arrest Parker for assault and battery of a family or household member.

"The test of constitutional validity of a warrantless arrest is whether at the moment of arrest the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense has been committed." *Byrd v. Commonwealth*, 50 Va. App. 542, 551 (2007) (quoting *Russell v. Commonwealth*, 33 Va. App. 604, 609 (2000)). Sufficient facts and circumstances are referred to as "probable cause." *See, e.g.*, *Purdie v. Commonwealth*, 36 Va. App. 178, 185 (2001). Probable cause "is an objective standard that focuses on the totality of the facts and circumstances," and "involves a much lower evidentiary standard than proof beyond a reasonable doubt." *Park v. Commonwealth*, 74 Va. App. 635, 646 (2022).

Additionally, "[i]n Virginia, authorization to make a warrantless arrest is limited to those situations provided for in the Code of Virginia." *Brown*, 27 Va. App. at 116. Code § 19.2-81.3(A) authorizes a law enforcement officer to "arrest without a warrant" for an alleged assault and battery against a family or household member "regardless of whether such violation was committed in his presence." Moreover, an officer "having probable cause to believe that" an assault and battery against a family or household member "has occurred *shall arrest and take into custody* the person he has probable cause to believe, based on the totality of the circumstances, was the predominant physical aggressor unless there are special circumstances which would dictate a course of action other than an arrest." Code § 19.2-81.3(B) (emphasis added). Code § 19.2-81.3(B) requires the officer to consider multiple factors in determining the predominant physical aggressor, including "who was the first aggressor," "the protection of the health and safety of family and household members," any "prior complaints of family abuse," "the relative severity of the injuries inflicted," and whether "any injuries were inflicted in self-defense." The officer also must consider any witness statements and "other observations." *Id.*

Deputy Stroop testified that Parker and Pecor gave conflicting accounts of the altercation. Pecor claimed that he merely defended himself against Parker's punches. Parker told Deputy Stroop that Pecor "threw her on the ground," "kicked her," and "smashed her head into a wall." Deputy Stroop observed that Pecor had sustained physical injuries but did not see the injuries that Parker claimed she had suffered. Nor did Deputy Stroop see any evidence inside the residence corroborating Parker's claim that Pecor slammed her head into the wall. Additionally, Parker admitted to Deputy Stroop that she had thrown the remote into the television and that she had been drinking.

Parker testified that she was shocked that the deputies arrested her because she had called 911 and she was the victim. Parker's description at trial of the statement she made to Deputy Stroop at the scene was materially consistent with Deputy Stroop's testimony: she told Deputy Stroop that Pecor had attacked her and she had defended herself. Importantly, however, nothing in Parker's testimony contradicts Deputy Stroop's testimony regarding the other evidence at the scene. With the evidence undisputed, the trial court was entitled to rule as a matter of law that Deputy Stroop reasonably believed that Parker committed assault and battery against Pecor and was the predominant physical aggressor. Therefore, the trial court did not err by refusing the four proposed jury instructions.

## CONCLUSION

For the foregoing reasons, we affirm Parker's conviction for assault and battery of a law enforcement officer.

*Affirmed.*